## Case No. 8,309.

### LEWEY v. UNITED STATES.

[15 Blatchf. 1.] [1]

Circuit Court, S. D. New York. July 1, 1878.

CUSTOMS DUTIES — PACKED WITH PERSONAL LUGGAGE—NOT ON MANIFEST—ISSUE FOR JURY OF FRAUDULENT KNOWLEDGE.

L. bought kid gloves in Europe, and had them packed as merchandise, in tin boxes, and the boxes put into trunks, which also contained a small amount of his personal baggage. The trunks, and their contents, were put on board of a steamer, at Liverpool, for New York, as his baggage, he going in the steamer as a passenger. The gloves did not appear on the manifest of the vessel. On arrival, L. did not claim the trunks as his baggage. They came off the vessel with the personal baggage of the passengers. The goods were seized as forfeited, because knowingly brought into the United States contrary to law, in violation of section 3082 of the Revised Statutes, not having been entered on the manifest of the vessel, as required by section 2806 of the Revised Statutes. At the trial in the district court, which took place after the passage of the act of June 22, 1874 (18 Stat. 189), that court, under section 16 of that act, submitted it to the jury to determine, whether L. fraudulently and knowingly, with an actual intention to defraud the United States, did so import and bring the goods into the United States, as to cause or procure them to be withheld from entry upon the manifest of the vessel. Held, that the charge was correct, and that the form of submitting such question to the jury was a proper compliance with section 16 of the said act of 1874.

[Cited in U. S. v. Two Hundred and Eight Bags of Kainit, 37 Fed. 327.]

[In error to the district court of the United States for the Southern district of New York.]

[This was a proceeding by the United States against Sampson Lewey for the forfeiture of certain goods alleged to have been fraudulently imported. In the district court, a verdict and judgment were rendered for the plaintiff, and the defendant brings error.]

Stephen G. Clarke and William Stanley, for plaintiff in error.

Sutherland Tenney, Asst. Dist. Atty., for defendants in error.

WAITE, Circuit Justice. Section 3082 of the Revised Statutes provides, that, "if any person shall fraudulently or knowingly import or bring into the United States * * * any merchandise, contrary to law, * * * such merchandise shall be forfeited." Another statute, passed June 22, 1874 (18 Stat. 189), and which was in force when the trial in this case was had, provides, (section 16,) that, upon a trial to enforce or declare the forfeiture of any goods by reason of any violation of the provisions of the customs laws, or of any of such provisions, "in which action, suit or proceeding an issue or issues of fact shall have been joined, it shall be the duty of the court, on the trial thereof, to submit to the jury, as a distinct and separate proposition, whether the alleged acts were done with an actual intention to de-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

fraud the United States, and to require upon such proposition a special finding by such jury."

The information in this case charges, among other things, that the goods in question were fraudulently and knowingly imported and brought into the United States, contrary to law, by some person or persons unknown. Section 2806 of the Revised Statutes provides, that "no merchandise shall be brought into the United States from any foreign port, in any vessel, unless the master has on board manifests in writing of the cargo, signed by such master." It is conceded by the claimant, that the goods complained of were merchandise, and that they were imported into the United States, as such, from a foreign port, in a vessel which did not have them on her manifest. They were, therefore, actually imported into the United States contrary to law; that is to say, they were imported without a compliance with the forms of the law. If this was fraudulently or knowingly done by any person, the goods were forfeitable. No one contends that the ship was in fault. The only question, therefore, is, whether the importer was equally innocent. The claimant concedes that he was the importer, and the court, in accordance with the requirement of the act of 1874, submitted it to the jury to determine, whether he, "fraudulently and knowingly, with an actual intention to defraud the United States, did so import and bring these goods into the United States, as to cause or procure them to be withheld from entry in the manifest of the vessel;" and the jury found that he did. Upon this state of facts, neither the verdict nor the judgment should now be disturbed, unless there was something in the rulings of the court upon this branch of the case that was wrong. As the proceeding was one to enforce a forfeiture of goods under the customs revenue laws, if there is enough in the case that is unimpeachable, to sustain the judgment of condemnation, errors not affecting the particular issue upon which the judgment rests need not be examined. The simple question to be considered here is, whether, upon the record as a whole, the judgment can be maintained.

So far as this point in the case is concerned, there is no complaint of the court below, except that it refused to instruct the jury to bring in a verdict against the United States. Everything else on the record, upon which error can be assigned, relates to the other causes of forfeiture set forth in the information, except, perhaps, the form of the submission to the jury, under the act of 1874, which I will consider further on. This requires a consideration of the undisputed facts. The claimant was an importer of kid gloves from Europe. That, so far as appears, was his sole business in New York. He went to Europe to buy goods and to make arrangements in respect to his business. He purchased the principal part of the goods for sale here upon their importation. They were packed as merchandise, in tin boxes, specially intended for their preservation from the effects of dampness while crossing the Atlantic, and these boxes were put into trunks, which also contained a small amount of the personal baggage of the claimant. While he went abroad to buy goods, it does not actually appear that he bought any other than these. He shipped them from Hamburg to Grimsby, as freight, but in such a form that they actually, without any intervention of his, as he insists, went on board the steamer on which he sailed from Liverpool, as his baggage. This was not unlawful, so far as the United States were concerned. Whether, being a passenger, he should pay for the transportation upon the steamer as baggage or freight, was a question of money and good faith between him and the steamer, with which the United States had nothing to do. If that was all, he incurred no risk of probable forfeiture. The steamer was excused from responsibility, if the facts were as he claims them to have been. But still, as between him and the United States, his goods, being merchandise, could not lawfully be brought into the United States on board the steamer, except they appeared upon her manifest. This, as an importer, he knew or ought to have known. They actually came in without a compliance with the requirement of the law. Upon his arrival, when asked about his baggage, he did not claim these trunks as part. He knew they could not appear upon the manifest of the vessel, as merchandise. He also knew, or ought to have known, that they would come off the ship with the personal baggage of her passengers. He had in his pocket, at the time, the invoice duly certified by the consul at Hamburg, but in another name than his own. The triplicate of that invoice was in the custom house at New York, when he arrived, but with nothing whatever to connect him or his trunks with it. It would show that one Rosenstirn, at Hamburg, had made oath to his ownership of an invoice of certain kid gloves, and that the consul was satisfied that it was the intention of the owner to enter them at the custom house in New York; but there was nothing whatever to indicate that the trunks seized were to contain the goods, or that the claimant was their owner. An agent had been employed to make the purchases in his own name. This bill of purchase was exhibited to the consul as the invoice upon which the importation into New York was to be made. The packages contained no marks whatever to connect their contents with the invoice, or the claimant with their ownership. The claimant appeared upon the books of the steamer, accidentally or otherwise, by a name not his own, and, when he arrived in New York, while waiting long enough at the dock to

see his trunks come off, he took no pains then to bring them specially to the attention of the customs officers, although it is conceded that his brother, who evidently had some knowledge of custom house forms, remained to watch developments. The next day, after the customs officers had made the seizure, he himself appeared, proffered his invoice and gave up his keys. Such action came too late. It could not explain away the effect of his previous acts of omission. The court properly refused to instruct the jury to bring in a verdict for the claimant, and the jury with equal propriety, under the law, found that the claimant "fraudulently and knowingly, and with an actual intention to defraud the United States, did so import and bring said goods into the United States, as to cause or procure them to be withheld from entry on the manifest of the vessel in which they were imported and brought into the United States." Upon such a verdict the sentence of condemnation was clearly right. The allegation in the second count of the information is clear and distinct, that "a person, or persons, unknown to the collector and said attorney of the United States, did fraudulently and knowingly import and bring into the United States, and assist in so doing, the said goods, wares and merchandise, contrary to law." That allegation is sufficient to support the judgment. If the claimant had desired to have it made more definite and certain, he should have made an application for that purpose before the trial.

But, it is further contended, that the question of "actual intention to defraud the United States" was not properly submitted to the jury, under the act of 1874. That act makes it the duty of the court "to require, upon such proposition, a special finding by such jury." The precise form in which the requirement shall be made is not given. All that is required is, that there shall be a special finding upon that proposition. In this case, the main proposition to be considered was, whether this claimant had fraudulently or knowingly imported or brought the goods in question into the United States, in such a manner as to cause or procure them to be kept from entry on the manifest of the vessel. That is all that would have been required for the jury to find, previous to the law of 1874. The proposition, as put to the jury, was: "Did Sampson Lewey fraudulently and knowingly, with an actual intention to defraud the United States, so import and bring these goods into the United States, as to cause or procure them to be withheld from entry upon the manifest of the vessel?" It is difficult to see how the precise proposition to be decided could be more distinctly put, to obtain a special finding, and it is certainly in the most explicit manner separated from every other question in the case. It matters not how many errors may have been committed in respect to the other aspects of the case. Upon the claimant's own testimony, taken in connection with the conceded facts, the judgment is right and is consequently affirmed.